IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MAGDALENA ZALESAK and<br>ERIC ZALESAK,<br><br>        Plaintiffs,<br><br>v.<br><br>ALLSTATE VEHICLE AND PROPERTY<br>INSURANCE COMPANY; CORRALES &<br>ASSOCIATES LLC; and<br>MATT MOUNCE,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)   Case No. CIV-25-01364-JD<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER

Before the Court is Plaintiffs Magdalena Zalesak and Eric Zalesak's ("Plaintiffs")

Motion to Remand. [Doc. No. 10]. Defendant Allstate Vehicle and Property Insurance

Company ("Allstate") filed a Response, and Plaintiffs filed a Reply. [Doc. Nos. 13, 15].

Upon consideration, the Court denies the Motion.

## I.    BACKGROUND

Plaintiffs owned property in Tulsa County covered by a full replacement cost

policy purchased from Allstate. [Doc. No. 1-2 ¶¶ 1, 2, 7]. Defendant Matt Mounce sold

Plaintiffs the policy, and then Defendant Corrales & Associates LLC ("Corrales") took

over as Plaintiffs' insurance agent, who then renewed the policy each year. [*See id.* ¶¶ 2,

5(a), 5(b)].

On May 21, 2024, a wind and hailstorm damaged the Insured Property. [*Id.*

¶ 12(a)]. Plaintiffs submitted a claim to Allstate, who hired Hancock Claims Consultants

to inspect the Insured Property. [*Id.* ¶ 12(b)]. Plaintiffs hired a roofing company to perform a joint inspection of the Insured Property. [*Id.* ¶ 12(c)]. Plaintiffs' roofer identified substantial hail damage to the roof and a large portion of the surface metals, gutters, downspouts, and exterior fascia and concluded that the roof was totaled due to severe hail damage. [*Id.* ¶ 12(d)]. Allstate only found damage to the roof's soft metals (rain cap, roof vent, and downspouts) and attributed other damage to the roof to non-covered, pre-existing defects. [*Id.* ¶ 12(e)]. Allstate's estimate to repair the damage was $1,165.35, which fell below Plaintiffs' deductible. [*Id.* ¶ 12(f)].

Plaintiffs' roofer subsequently submitted images to Allstate that detailed the extent of damage to the roof of the Insured Property and requested a reinspection. [*Id.* ¶ 12(h)]. Following the reinspection, Allstate issued a second estimate of damages, which accounted for damage to the gutters and spot repair of individual shingles and increased the estimate of damages by $1,389.30. [*Id.* ¶¶ 12(i), (j)]. The second estimate was also below Plaintiffs' deductible. [*Id.* ¶ 12(j)]. In a letter denying Plaintiffs' claim, Allstate attributed other damage to Plaintiffs' roof to "granule loss, blistering, wear and tear, loose nails, and shingle zippering." [*Id.* ¶ 12(k)]. Plaintiff's roofer contacted Allstate to request an explanation, and Allstate's adjuster stated he reviewed Hancock's findings and determined Allstate would not cover damage to the shingles that was attributable to "wear and tear" and "blistering." [*Id.* ¶ 12(l)].

Plaintiffs initiated this case in the District Court of Oklahoma County against Allstate, Corrales, and Mounce. [*Id.* at 2].[1] Plaintiffs assert causes of action of breach of contract and breach of the duty of good faith and fair dealing against Allstate, negligent procurement against Corrales and Mounce, and constructive fraud/negligent misrepresentation against all Defendants. [*Id.* ¶¶ 17–73].

In support of their negligent procurement claim, Plaintiffs state that Mounce and Corrales breached duties owed to Plaintiffs by procuring and renewing: (1) illusory coverage; (2) coverage deviating substantially and materially from that which Plaintiffs requested; (3) a policy that did not accurately reflect the replacement cost of the Insured Property; and (4) a policy that, as written, did not provide coverage to fully restore the Insured Property back to its pre-loss condition. [*Id.* ¶ 55]. Plaintiffs also claim that Mounce and Corrales breached duties owed to Plaintiff by failing to do the following:

follow and abide by Allstate's underwriting policies/guidelines;

perform all necessary inspections of the Insured Property;

confirm the accuracy of the information provided by Allstate's replacement cost estimating tool;

disclose pre-existing damage to the Insured Property;

verify whether its inherent representation to Allstate and Plaintiffs that the Insured Property (including the roof) was in good condition was accurate;

procure (Mounce) and renew (Corrales) a policy that provided the requested coverage for all fortuitous losses; and

disclose all material facts of the Scheme as outlined within this Petition.

---

[1] In this Order, the Court uses page numbering from the CM/ECF stamp at the top of the district court docket filing.

[*Id.* ¶ 56]. Plaintiffs allege that Allstate is engaged in a widespread scheme pursuant to which Allstate wrongfully denies claims for damage to covered properties caused by wind and hail. [*Id.* ¶ 10].

In support of their constructive fraud/negligent misrepresentation claim, Plaintiffs state that Mounce and Corrales misrepresented, concealed, or omitted the following material facts:

> They misrepresented that the Insured Property met all underwriting requirements, that all property inspections had occurred, and that the replacement cost values calculated were accurate and commensurate with reconstruction costs such that the coverage would fully restore, replace and/or repair the Insured Property (including its roof) in the event of a loss by a covered event.

> They misrepresented that the Insured Property (and, specifically, its roof) was eligible for the comprehensive full replacement coverage (rather than ACV).

> They failed to disclose pre-existing issues (here, age of the roof) with the Insured Property that would either prevent issuance of the replacement cost coverage or limit coverage for any damage during the Policy period.

> They misrepresented that the Policy provided the comprehensive coverage Plaintiffs requested.

> They misrepresented that the Policy covered all fortuitous losses and that weather-related damage (even cosmetic)—big or small—was fully covered under the Policy.

> They failed to disclose material information to an insured about Allstate's bad faith claims handling tactics, its reliance on undisclosed definitions and standards outside of the Policy, internal and external complaints about Allstate's handling of wind and hailstorm claims, and other material information any insured would deem reasonable in making a purchasing decision.

4

> They failed to disclose yearly nationwide complaints via Allstate captive agents across the country and in Oklahoma's region specifically with respect to how Allstate handled, adjusted, and failed to pay wind and hail claims, including paying for full roof replacements.

[*Id.* ¶ 66].

Allstate removed the case to this Court based upon diversity jurisdiction. [*See* Doc. No. 1 at 3–5]. Allstate alleges that diversity jurisdiction is proper because Plaintiffs fraudulently joined Mounce and Corrales for the purpose of destroying complete diversity. [*Id.* at 7–17]. Plaintiffs filed the Motion, requesting that the Court remand this case to state court because Mounce and Corrales are not fraudulently joined. [*See* Doc. No. 10].

## II.    STANDARD OF REVIEW

### A.    Diversity Jurisdiction

A case generally may be removed to federal court if it is one over which the federal courts have original jurisdiction. 28 U.S.C. § 1441(a). Original jurisdiction includes disputes between citizens of different states where the amount in controversy exceeds $75,000, exclusive of interest and costs. *Id.* § 1332(a)(1). Federal jurisdiction under 28 U.S.C. § 1332(a) requires "complete diversity" among the parties, meaning the citizenship of all defendants must be different from the citizenship of all plaintiffs. *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005).

A party invoking diversity jurisdiction—here, Allstate—has the "burden of proving [diversity jurisdiction] by a preponderance of the evidence." *Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014). Because federal courts are limited

tribunals, "statutes conferring jurisdiction upon the federal courts, and particularly removal statutes, are to be narrowly construed." *Pritchett v. Off. Depot, Inc.*, 420 F.3d 1090, 1094–95 (10th Cir. 2005) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941)).

### B.    Fraudulent Joinder

The Supreme Court has long recognized that a defendant's "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy." *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921); *see also Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 185–86 (1907). The doctrine of fraudulent joinder permits a federal court to disregard the citizenship of a nondiverse defendant against whom the plaintiff has not asserted or cannot assert a colorable claim for relief. *See Dutcher v. Matheson*, 733 F.3d 980, 988 (10th Cir. 2013); *see also Anderson v. Lehman Bros. Bank, FSB*, 528 F. App'x 793, 796 (10th Cir. 2013) (unpublished) (explaining that a case was properly removed where "the complaint fails to state a colorable cause of action" against the nondiverse defendant).

To establish fraudulent joinder, the removing party has the "heavy burden" to prove either: (1) actual fraud in the pleading of jurisdictional facts; or (2) the inability of the plaintiff to establish a cause of action against the non-diverse party in state court. *Dutcher*, 733 F.3d at 988. Allstate invokes the latter basis. [Doc. No. 1 at 6–7].

If there is "a reasonable basis to believe the plaintiff might succeed in at least one claim against the non-diverse defendant," then the Court must remand the case. *Nerad v. AstraZeneca Pharms., Inc.*, 203 F. App'x 911, 913 (10th Cir. 2006) (unpublished). "A

'reasonable basis' means just that: the claim need not be a sure-thing, but it must have a basis in the alleged facts and the applicable law." *Id.* In contrast, the non-liability of the defendant alleged to be fraudulently joined must be established with "complete certainty." *Smoot v. Chi., Rock Island & Pac. R.R. Co.*, 378 F.2d 879, 882 (10th Cir. 1967); *see Dodd v. Fawcett Publ'ns, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964) (same).

Importantly, "upon specific allegations of fraudulent joinder the court may pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available." *Smoot*, 378 F.2d at 882 (citations omitted). In this context, courts are not "compelled to believe whatever the plaintiff says in his complaint." *Brazell v. Waite*, 525 F. App'x 878, 881 (10th Cir. 2013) (unpublished). Courts are free to disregard conclusory allegations. *Id.* at 883 (explaining that where the plaintiff "makes conclusory allegations," the claim "was without merit and did not prevent removal"). "'[F]ederal courts may look beyond the pleadings to determine if the joinder, although fair on its face, is a sham or fraudulent device to prevent removal.'" *Id.* at 881 (quoting *Smoot*, 378 F.2d at 881–82).

The Tenth Circuit is clear that the analysis is not a mini-trial or pre-trial where the Court weighs the evidence and makes a merits-based determination. As it has stated, "'[a] claim which can be dismissed only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction.'" *Id.* (quoting *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 853 (3d Cir. 1992)). Finally, the Court resolves "all disputed questions of fact and all ambiguities in the controlling [state] law in favor of the non-removing party." *Montano v. Allstate*

*Indem.*, No. 99-2225, 2000 WL 525592, at *1 (10th Cir. Apr. 14, 2000) (unpublished) (quoting *Hart v. Bayer Corp.*, 199 F.3d 239, 246 (5th Cir. 2000)).

## III.    ANALYSIS

Plaintiffs assert two claims against Mounce and Corrales—negligent procurement of insurance and constructive fraud/negligent misrepresentation. [Doc. No. 1-2 ¶¶ 37–73]. The Court will consider Plaintiffs' allegations regarding each cause of action to determine whether Plaintiffs are able to assert a claim against Mounce and Corrales in state court. In this diversity action, the Court must determine if Plaintiffs' claims have a reasonable basis in state court, thus applying Oklahoma law.

### A.    Plaintiffs' negligent procurement claim does not have a reasonable basis in Oklahoma law.

The Court first considers whether Allstate has demonstrated that Plaintiffs lack a "reasonable basis" for their negligent procurement of insurance claim against Mounce and Corrales. *Nerad*, 203 F. App'x at 913. An insured can assert a tort claim for negligent procurement of insurance against his agent. "An agent has the duty to act in good faith and use reasonable care, skill and diligence in the procurement of insurance and an agent is liable to the insured if, by the agent's fault, insurance is not procured as promised and the insured suffers a loss." *Swickey v. Silvey Cos.*, 1999 OK CIV APP 48, ¶ 13, 979 P.2d 266, 269; *accord Oliver v. State Farm Fire & Cas. Co.*, 765 F. Supp. 3d 1244, 1249 (W.D. Okla. 2025).

In their Motion, Plaintiffs state that they made "a specific request for full replacement cost coverage" that Mounce and Corrales failed to obtain and maintain.

8

[Doc. No. 10 at 24]. However, Plaintiffs' Petition specifically states that Plaintiffs purchased a full replacement cost policy. [Doc. No. 1-2 ¶ 2]. Accordingly, Plaintiffs' own factual allegations contradict any claim that they did not receive the type of policy they requested.

Plaintiffs also claim Mounce's and Corrales's "specialized knowledge meant they knew it would fail to provide the promised full replacement cost coverage if the home featured a roof defect." [Doc. No. 10 at 24–25]. Consequently, the Court must determine if Mounce and Corrales breached an insurance agent's "duty to act in good faith and use reasonable care, skill and diligence in the procurement of insurance" by failing to provide the coverage requested by Plaintiffs. *See Swickey*, 1999 OK CIV APP 48, ¶ 13, 979 P.2d at 269. Plaintiffs assert that Mounce and Corrales "should have discovered and disclosed any purported pre-existing damage to the Insured Property." [Doc. No. 10 at 25]. However, Plaintiffs have not cited Oklahoma law that supports insurance agents have such a duty. As stated by a prior decision from the Western District:

> None of the cases cited by plaintiffs suggest that Oklahoma law imposes, without more, such a duty on the agent. In particular, plaintiff has not identified any Oklahoma case suggesting that whatever role an agent plays in the underwriting process results in a duty owed to the insured. Plaintiffs point to various documents obtained in discovery addressing an inspection/underwriting function for [insurance] agents, but none of those suggest some duty to the insured. In other words, [the insurance company] may well have multiple requirements as to what it expects its agents to do as part of its underwriting process, but that is not the same thing as concluding there is some underwriting duty owed to the insured.

*Marino v. State Farm Fire & Cas. Co.*, No. CIV-22-0885-HE, 2023 WL 11915691, at *3 (W.D. Okla. Aug. 7, 2023) (quotation modified). Accordingly, the Court cannot conclude

9

that Plaintiffs' claim has a reasonable basis in Oklahoma law because Oklahoma law does not impose a duty upon insurance agents to inspect insured properties and disclose defects to the insureds.

Plaintiffs also argue that Mounce and Corrales "were obligated to disclose to Plaintiffs that Allstate may weaponize the Policy exclusions as well as internal tactics to preclude coverage." [Doc. No. 10 at 25]. However, Plaintiffs do not explain how this allegation supports a negligent procurement claim, which examines whether insurance agents failed to deliver a policy or coverage specifically requested and that the insurance agent promised to deliver. *See Swickey*, 1999 OK CIV APP 48, ¶ 13, 979 P.2d at 269. It is well established that insurance agents do not have a duty to explain insurance policies to insureds. "Courts routinely reject insureds' attempts to hold their insurance agent or insurance company liable for failing to explain the terms of coverage." *Smith v. Allstate Vehicle & Prop. Ins. Co.*, No. CIV-14-0018-HE, 2014 WL 1382488, at *3 (W.D. Okla. Apr. 8, 2014). Accordingly, neither Mounce nor Corrales had a duty to explain policy provisions that could negate coverage.

### B.     Plaintiffs' negligent misrepresentation/fraudulent concealment claim lacks a reasonable basis in the facts alleged.

The Court next considers whether Allstate has demonstrated that Plaintiffs lack a "reasonable basis" for their constructive fraud/negligent misrepresentation claim against Mounce and Corrales. *Nerad v. AstraZeneca Pharms., Inc.*, 203 F. App'x 911, 913 (10th Cir. 2006) (unpublished). "Under Oklahoma law, constructive fraud [or negligent misrepresentation] consists of 'any breach of duty which, without an actually fraudulent

intent, gains an advantage to the person in fault, or any one claiming under him, by misleading another to [his] prejudice, or to the prejudice of any one claiming under him[.]'" *McDow v. State Farm Fire & Cas. Co.*, No. CIV-22-927-F, 2022 WL 17960457, at *2 (W.D. Okla. Dec. 27, 2022) (last bracket in original) (quoting 15 Okla. Stat. § 59). Accordingly, Plaintiffs must plead facts which demonstrate (1) Mounce and Corrales breached a duty to Plaintiffs, (2) Mounce and Corrales benefited from that breach, and (3) Plaintiffs suffered prejudice as a result of the breach.

Here, Plaintiffs argue that Mounce and Corrales had a duty of disclosure because they "chose to represent to Plaintiffs that the condition of the insured property was sufficient for coverage under an Allstate policy." [Doc. No. 10 at 28 (emphasis omitted)]. Pursuant to Oklahoma law, "[a]lthough a party may keep absolute silence and violate no rule of equity, yet, if he volunteers to speak and to convey information which may influence the conduct of the other party, he is bound to disclose the whole truth." *Uptegraft v. Dome Petrol. Corp.*, 1988 OK 129, ¶ 12, 764 P.2d 1350, 1353–54. However, Plaintiffs have not identified the nature of Mounce's and Corrales's alleged representations about the condition of the Insured Property. In its Response, Allstate points out that Plaintiffs do not respond to Allstate's contention that Mounce and Corrales did not make any affirmative statements about the condition of the Insured Property, replacement cost value calculations, or whether the Insured Property met underwriting guidelines. [Doc. No. 13 at 11]. In their Reply, Plaintiffs state "Plaintiffs alleged Agent Defendants made representations and/or omitted material facts about the suitability of the property for full replacement cost coverage, underwriting eligibility, and

the scope and character of the coverage being sold/renewed, thereby triggering a duty to speak truthfully and completely." [Doc. No. 15 at 4–5].

These allegations do not sufficiently identify whether Mounce or Corrales made an affirmative statement about the condition of the Insured Property, which triggered a duty of full disclosure. If Mounce and Corrales merely failed to disclose material facts about the Insured Property, that would not give rise to a duty of full disclosure as Plaintiffs have specifically stated that the duty of full disclosure arose due to the agents' partial disclosure. [Doc. No. 10 at 28 ("[O]nce Agent Defendants *chose* to represent to Plaintiffs that the condition of the insured property was sufficient for coverage under an Allstate policy, the duty to do so honestly arose.")].

Similarly, as this Court's past decisions have made clear, if Plaintiffs are alleging that representations about the condition of the Insured Property were implicit in Mounce's and Corrales's acts of issuing a policy, that is also an insufficient basis for triggering their duty of full disclosure. *See Hall v. State Farm Fire & Cas. Co.*, No. CIV-25-00012-JD, 2025 WL 2905205, at *6 (W.D. Okla. Oct. 13, 2025) ("The Court declines to conclude that a reasonable basis for a constructive fraud/negligent misrepresentation claim is an inherent or implied representation attendant to the issuance of an insurance policy. If that were the case, almost no circumstances would exist in which an agent could not be joined as a party to a lawsuit relating to coverage."). Nor is the Court convinced that statements that the Insured Property qualified for full replacement cost coverage or met Allstate's underwriting guidelines would be sufficient to trigger a duty of full disclosure about any condition that could negate coverage. If that were the case,

insurance agents would have a duty of full disclosure anytime they sold a policy, which is not the state of Oklahoma law. *See Cook v. State Farm Fire & Cas. Co.*, No. CIV-25-1098-R, 2025 WL 3461564, at \*3 (W.D. Okla. Dec. 2, 2025) ("Contrary to Plaintiffs' suggestion, the Oklahoma cases do not support the idea that an agent is required to personally inspect a premises before renewing or binding a policy or that, merely by renewing or binding a policy, the agent impliedly or 'inherently' represents that no exclusions in the policy potentially apply or that a claim will be paid.") (quotation modified). However, the Court is unable to evaluate the sufficiency of the statement, or if a statement was made, because Plaintiffs have not identified it.

When considering allegations of fraudulent joinder, the Court is obligated to resolve factual disputes in favor of Plaintiffs. *See Strahan v. Allstate Indem. Co.*, No. CIV-14-1392-C, 2015 WL 730055, at \*2 (W.D. Okla. Feb. 19, 2015) ("In evaluating fraudulent joinder claims, we must initially resolve all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party. We are then to determine whether that party has any possibility of recovery against the party whose joinder is questioned.") (quotation modified) (quoting *Hart v. Bayer Corp.*, 199 F.3d 239, 246 (5th Cir. 2000)). But when the dispute in question is an ambiguity in Plaintiff's own pleading and arguments, the Court does not have that obligation. Even if not clearly stated in their Petition, Plaintiffs have the opportunity through their remand briefing to articulate the basis for their constructive fraud/negligent misrepresentation claim and have failed to clearly do so. Accordingly, the Court concludes that Plaintiffs have not adequately alleged facts that support that Mounce and Corrales made affirmative

13

statements to Plaintiffs that triggered a duty of full disclosure regarding the condition of the Insured Property. Their constructive fraud/negligent misrepresentation claim does not, therefore, have a reasonable basis in the facts alleged by Plaintiffs.

## IV.    CONCLUSION

For the reasons outlined above, the Court DENIES Plaintiffs' Motion to Remand. [Doc. No. 10]. The Court dismisses Plaintiffs' claims against Mounce and Corrales without prejudice but without leave to amend in this action.[2]

IT IS SO ORDERED this 11th day of May 2026.

_____
JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE

---

[2] *See Anderson v. Lehman Bros. Bank, FSB*, 528 F. App'x 793, 796 (10th Cir. 2013) (unpublished) (explaining that "[o]nce it determined that [the nondiverse defendant] had been fraudulently joined," the district court "was required to dismiss him from the case without prejudice"). Although Plaintiffs alternatively request leave to amend in their Motion, [*see* Motion at 30–31], Plaintiffs failed to follow Local Civil Rule 15.1. Specifically, Plaintiffs failed to attach the proposed pleading as an exhibit to their Motion and failed to state whether any other party objects. *See* LCvR15.1. Because Plaintiffs failed to comply with the rule, the Court denies the alternative request.

14